## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CYNTHIA W., on behalf of**
**T.C., a minor,**

      **Plaintiff,**

                        **Case No. 2:19-cv-15806**

    **v.**                           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Cynthia W. (hereinafter "Plaintiff") on behalf of T.C., her minor son (hereinafter "Claimant"), for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I.    PROCEDURAL HISTORY

The application for benefits, filed on June 29, 2015, alleges that Claimant has been disabled since September 1, 2013. R. 203‒11. The application was denied initially and upon

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 155–57, 161–64. Plaintiff sought a *de novo* hearing before an administrative

law judge. R. 165. Administrative Law Judge ("ALJ") Richard West held a hearing on January

17, 2018, at which Plaintiff and Claimant, who were proceeding without the assistance of

counsel,[2] testified. R. 103–31. In a decision dated March 20, 2018, the ALJ concluded that

Claimant was not disabled within the meaning of the Social Security Act from June 29, 2015, the

date on which the application was filed, through the date of that decision. R. 23–37. That

decision became the final decision of the Commissioner of Social Security when the Appeals

Council declined review on February 27, 2019. R. 1–5. Plaintiff timely filed this appeal pursuant

to 42 U.S.C. § 405(g). ECF No. 1. On December 29, 2020, Plaintiff consented to disposition of

the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 12.[3] On that same day, the case was reassigned to the

undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

---

[2] At the administrative hearing, the ALJ advised Plaintiff of her right to representation and offered to continue the hearing to permit Plaintiff to secure counsel. R. 23, 106–07. Plaintiff chose to proceed with the hearing without the assistance of counsel. R. 23, 107.

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and to "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

As previously noted, Plaintiff in this case is proceeding without the assistance of counsel. Courts have a duty to liberally construe *pro se* litigants' filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir. 2011) ("Pro se pleadings are often submitted by individuals with limited skills and technical expertise in the law."). Despite this liberal construction, however, "unrepresented litigants are not relieved from the rules of procedure and the requirements of substantive law." *Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016) (citations omitted); *see also Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "While a court must construe a pro se litigant's pleadings liberally, it need not act as [her] advocate." *United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.    Sequential Evaluation Process**

The Social Security Act establishes a three-step sequential evaluation process for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. § 416.924(a)−(d). The plaintiff has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b).  If so, then the inquiry ends because the claimant is not disabled.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If not, or if the claimant's impairment is only a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or medically or functionally equals a Listing, and that also meets the duration requirement, the claimant  will be found to be disabled and qualified for benefits. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a Listing, the ALJ considers all the

evidence in the claimant's record regarding the claimant's impairment(s) and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a [L]isting . . . the examiner must determine whether the impairment functionally equals a [L]isting." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or in one "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*.

An "extreme" limitation in a domain occurs when the claimant's impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation is "more than marked" and is the rating given to the worst limitations. *Id*. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. *Id*. It is the equivalent of the functioning expected to be

found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

Finally, an ALJ is required to use a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id*. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. An impairment "may have effects in more than one domain" and the ALJ must evaluate all limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id*. "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

## III.    ALJ DECISION AND APPELLATE ISSUES

Claimant, who was born on January 7, 2003, was 10 years old on his alleged disability onset date of September 1, 2013. R. 133, 145. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since June 29, 2015, the application date. R. 26.

At step two, the ALJ found that Claimant suffers from the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and a learning disorder. *Id*.

At step three, the ALJ found that Claimant did not suffer an impairment that met or medically equaled the severity of any Listing. R. 26−27. The ALJ also found that Claimant

does not have an impairment or combination of impairments that functionally equals the severity of any Listing. R. 27–37. Specifically, although the ALJ found that Claimant had a marked limitation in the domain of attending and completing tasks, the ALJ also found that Claimant had less than marked limitations in the domains of acquiring and using information, interacting and relating with others, and caring for himself, and had no limitations in the domain of moving about and manipulating objects and health and physical well-being. *Id.*

Based on those findings, the ALJ concluded that the Claimant has not been disabled within the meaning of the Social Security Act since June 29, 2015, the date on which the application for benefits was filed. R. 37.

The Court has construed Plaintiff's filings liberally. *See Erickson*, 551 U.S. at 94; *Higgs*, 655 F.3d at 340. Plaintiff disagrees with the ALJ's findings at step three and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 21. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 23.

## IV.   DISCUSSION

Plaintiff contends that the effects of Claimant's diagnoses render him unable to function, *Plaintiff's Brief*, ECF No. 21, which the Court (and the Acting Commissioner) understand as challenging the ALJ's conclusion that the Claimant's impairments do not functionally equal a listed impairment. As previously discussed, before a child's impairment can be regarded as the functional equivalent of a listed impairment, it must be established that the child has marked

limitations in at least two of the six functional domains. 20 C.F.R. § 416.926a. Because the ALJ

found that Claimant had a marked limitation in one domain, *i.e.,* attending and completing tasks,

R. 30−31, Plaintiff must establish only that Claimant had a marked restriction in at least one

other domain. For the reasons that follow, Plaintiff has not made this showing.

### 1.    Acquiring and using information

The domain of acquiring and using information assesses how well a child acquires or

learns information and how well the child uses the information that the child has learned. 20

C.F.R. § 416.926a(g). The ALJ noted what an adolescent (child age 12 to attainment of age 18)

without an impairment should be able to do and explained why Claimant had a less than marked

limitation in this domain:

> Pursuant to SSR 09-03p, while there is a wide range of normal development, most
> children follow a typical course as they grow and mature. To assist adjudicators in
> evaluating a child's impairment-related limitations in the domain of "Acquiring and
> using information," we provide the following examples of typical functioning
> drawn from our regulations, training, and case reviews. These examples are not all-
> inclusive, and adjudicators are not required to develop evidence about each of them.
> They are simply a frame of reference for determining whether children are
> functioning typically for their age with respect to acquiring and using information.
>
> Adolescents (age 12 to attainment of age 18):
>
> > • Continues to demonstrate learning in academic assignments (for
> > example, in composition, during classroom discussion, and by
> > school laboratory experiments).
> > • Applies learning in daily situations without assistance (for
> > example, going to the store, getting a book from the library, or using
> > public transportation).
> > • Comprehends and expresses simple and complex ideas using
> > increasingly complex language in academic and daily living
> > situations.
> > • Learns to apply knowledge in practical ways that will help in
> > employment (for example, carrying out instructions, completing a
> > job application, or being interviewed by a potential employer).
> > • Plans ahead for future activities.
> > • Begins realistic occupational planning.

The evidence supports a finding that the claimant has less than marked limitation in the domain of acquiring and using information. For example, at the January 17, 2018 hearing, the claimant's mother, Cynthia W[.], testified that the claimant was placed in special education, he receives regular treatment through the Rutgers Behavioral Clinic for attention-related and anxiety issues; he has been failing classes this year; and he has problems retaining what he reads. However, the state agency examiners found that the claimant has less than marked limitation in acquiring and using information (Exhibit 4A at 5) because he had not been in special education classes at the time of the evaluation; his working memory is average; his processing speed is nearly average; his math teacher indicates that his abilities are on a 5th-grade level; and he shows no serious or very serious problems in this domain.

Based upon a review of the entire record, including hearing testimony, medical records, and school records, I conclude that the claimant has less than marked limitation in the domain of acquiring and using information.

R. 29–30.

Plaintiff asserts that Claimant has learning disabilities, PTSD, and an individualized education plan ("IEP"). *See Plaintiff's Brief*, ECF No. 21. However, the state agency experts who found that Claimant had a less than marked limitation in this domain noted that Claimant had not been in special education classes at the time of the evaluation; his working memory was average; his processing speed was nearly average; his math teacher indicated that Claimant's abilities fell at the 5th-grade level; and Claimant showed no serious or very serious problems in this domain. R. 30, 140, 149. This substantial evidence supports the ALJ's analysis and conclusion that Claimant had less than marked impairments in the domain of acquiring and using information. *See* 20 C.F.R. § 416.926a(g)(2)(v); SSR 09-1p.

### 2.    Interacting and relating with others

The domain of interacting and relating with others assesses how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). As noted by the ALJ,

11

Pursuant to SSR 09-5p, while there is a wide range of normal development, most children follow a typical course as they grow and mature. To assist adjudicators in evaluating impairment-related limitations in the domain of "Interacting and relating with others," we provide the following examples of typical functioning drawn from our regulations, training. and case reviews. These examples are not all-inclusive, and adjudicators are not required to develop evidence about each of them. They are simply a frame of reference for determining whether children are functioning typically for their age with respect to the ability to interact and relate with others.

Adolescents (age 12 to attainment of age 18):

> • Initiates and develops friendships with children of the same age.
> • Relates appropriately to children of all ages and adults, both individually and in groups.
> • Is increasingly able to resolve conflicts between self and family members, peers, and others outside of family.
> • Recognizes that there are different social rules for dealing with other children than with adults (for example, behaving casually with friends, but more formally with people in authority).
> • Describes feelings, seeks information, relates events, and tells stories in all kinds of environments (for example, at home or in school) and with all kinds of people (for example, parents, siblings, friends, or classmates).
> • Develops increasing desire for privacy.
> • Focuses less attention on parents and more on relationships with peers.

R. 32−33. The ALJ found that Claimant had a less than marked limitation in this domain,

reasoning as follows:

Based upon a review of the entire record, including hearing testimony, medical records, and school records, I conclude that the claimant has less than marked limitation in the domain of interacting and relating with others. For example, the state agency examiners found that the claimant has less than marked limitation in the domain of interacting and relating with others (Exhibit 4A at 5) because the teacher questionnaire indicates no more than slight problems in all but one item; no to slight problems on all items except a very serious problem with introducing and maintaining appropriate conversation; medical evidence of record indicates close family and peer relationships but some fights in school; September 15, 2015 progress note (Exhibit 3F) shows that the claimant's mother denies problems with socialization; the claimant has many friends and enjoys spending time with peers; and no behavioral modification plan has been implemented in school. Moreover, in the November 20, 2015 questionnaire, the claimant's teacher states that the claimant has a very serious problem in introducing and maintaining relevant and appropriate topics of conversation, but all other items were rated as no problem or

12

> a slight problem, including making and keeping friends, following rules, and respecting adults in authority (Exhibit 6E).

R. 33. The Court finds no error with the ALJ's reasoning in this regard. Notably, Plaintiff offers no specific argument to this finding despite generally disagreeing with the ALJ's decision. *See generally Plaintiff's Brief*, ECF No. 21; *see also Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction. . . as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the plaintiff's] position."); *Hutcheson o/b/o A.M. v. Berryhill*, No. 3:16-CV-2023, 2017 WL 3581675, at *9 (M.D. Pa. Aug. 18, 2017) (finding that the plaintiff "failed to show error" when her briefs advanced "no specific argument" in support of her general challenge to the ALJ's finding in a domain). Accordingly, the Court concludes that substantial evidence supports the ALJ's analysis and conclusion that Claimant had less than marked impairments in the domain of interacting and relating with others. *See* 20 C.F.R. § 416.926a(i)(2)(v).

### 3.      Moving about and manipulating objects

The domain of moving about and manipulating objects assesses how a child moves his or her body from one place to another and how he or she moves and manipulates things, *i.e.*, gross and fine motor skills. 20 C.F.R. § 416.926a(j). As noted by the ALJ:

> Pursuant to SSR 09-6p, while there is a wide range of normal development, most children follow a typical course as they grow and mature. To assist adjudicators in evaluating a child's impairment-related limitations in the domain of "Moving about and manipulating objects," we provide the following examples of typical functioning drawn from our regulations, training, and case reviews. These examples are not all-inclusive, and adjudicators are not required to develop evidence about each of them. They are simply a frame of reference for determining whether children are functioning typically for their age with respect to the development and use of gross and fine motor skills.

> Adolescents (age 12 to attainment of age 18):

> • Uses motor skills to move easily and freely at home, at school, and
> in the community.
> • Participates in a full range of individual and group physical fitness
> activities.
> • Shows mature skills in activities requiring eye-hand coordination.
> • Possesses the fine motor skills to write efficiently or type on a
> keyboard.

R. 34. The ALJ found that Plaintiff had no limitation in this domain, reasoning as follows:

> Based upon a review of the entire record, including hearing testimony, medical
> records, and school records, I conclude that the claimant has no limitation in the
> domain of moving about and manipulating objects. For example, the state agency
> examiners found that the claimant has no limitation in the domain of moving about
> and manipulating objects (Exhibit 4A at 5-6) because no such limitations have been
> alleged or observed. Also, in the function report, Ms. W[.] notes no limitation in
> the claimant's physical abilities, such as walking, running, and throwing a ball.

*Id*.

This analysis reflects the ALJ's careful consideration of school and medical records as well as other record evidence in finding that Claimant had no limitation in this domain. *Id*. Plaintiff has not explained why this analysis was deficient. *See generally Plaintiff's Brief*, ECF No. 23. Notably, as the ALJ observed, Plaintiff identified no limitation in Claimant's physical abilities such as walking, running, or throwing a ball. R. 34, 254. The Court therefore finds that substantial evidence supports the ALJ's conclusion that the Claimant had no limitation in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(j)(2)(v).

### 4.    Caring for oneself

The domain of caring for oneself assesses how well a child maintains a healthy emotional and physical state, including how well the child gets his physical and emotional wants and needs met in appropriate ways; how the child copes with stress and changes in his environment; and whether the child takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). As the ALJ noted,

14

Pursuant to SSR 09-7p, while there is a wide range of normal development, most children follow a typical course as they grow and mature. To assist adjudicators in evaluating impairment-related limitations in the domain of "Caring for yourself," we provide the following examples of typical functioning drawn from our regulations, training, and case reviews. These examples are not all inclusive, and adjudicators are not required to develop evidence about each of them. They are simply a frame of reference for determining whether children are functioning typically for their age with respect to maintaining a healthy emotional and physical state.

Adolescents (age 12 to attainment of age 18):

   • Discovers appropriate ways to express good and bad feelings (for example, keeps a diary, exercises).
   • Feels more independent from others and becomes increasingly independent in all daily activities.
   • Sometimes feels confused about how he feels about himself.
   • Notices significant changes in his body's development, which can result in some anxiety or worry about self and body (may sometimes cause anger and frustration).
   • Begins to think about future plans (for example, work).
   • Maintains personal hygiene adequately (for example, bathing, brushing teeth, wearing clean clothing appropriate for weather and context).
   • Takes medications as prescribed.

R. 35−36. The ALJ found that the Claimant had a less than marked limitation in this domain, reasoning as follows:

Based upon a review of the entire record, including hearing testimony, medical records, and school records, I conclude that the claimant has less than marked limitation in the domain of caring for yourself. For example, the state agency examiners found that the claimant has has [sic] less than marked limitation in the domain of caring for yourself (Exhibit 4A at 7) because the teacher's questionnaire (Exhibit 6E) indicates no problems in this domain; in the function report (Exhibit 8E), the claimant's mother alleges limitations in this domain, but then indicates the claimant is able to perform a majority of the abilities queried, such as getting to school on time, keeping out of trouble, and obeying rules. Moreover, in the November 20, 2015 questionnaire, the claimant's teacher noted no problems in this domain (Exhibit 6E).

R. 36. The Court finds no error with the ALJ's reasoning in this regard. Notably, Plaintiff offers no specific challenge to this finding, although she generally challenges the ALJ's decision. *See*

15

generally *Plaintiff's Brief*, ECF No. 21; *see also Atkins*, 2020 WL 1970531, at \*4; *Hutcheson o/b/o A.M.*, 2017 WL 3581675, at \*9. Accordingly, the Court concludes that substantial evidence supports the ALJ's analysis and conclusion that Claimant had a less than marked limitation of function in the domain of caring for oneself. *See* 20 C.F.R. § 416.926a(k)(2)(v); *Perdomo v. Comm'r of Soc. Sec.*, No. CV 17-5003, 2020 WL 7586945, at \*12 (D.N.J. Dec. 22, 2020) (finding that substantial evidence supported the ALJ's finding of a less than marked limitation in the domain of caring for oneself where, *inter alia*, the claimant's mother reported the claimant was unable to perform certain functions but the claimant's teachers and state agency reviewing physicians found no limitation in this domain).

### 5.    Health and physical well-being

The domain of health and physical well-being considers the cumulative effects of physical or mental impairments and their associated treatments or therapies on the child's functioning that was not considered in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(l). As the ALJ notes,

> Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning. The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being (20 CFR 416.929a(l) and SSR 09-8p).

> Social Security regulation 20 CFR 416.926a(l)(3) and SSR 09-8p set forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv)

periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

R. 36. The ALJ found that Claimant had no limitation in this domain, reasoning as follows:

Based upon a review of the entire record, including hearing testimony, medical records, and school records, I conclude that the claimant has no limitation in the domain of health and physical well-being. For example, the state agency examiners found that the claimant has no limitation in the domain of health and physical well-being (Exhibit 4A at 7) because no such limitations have been alleged or observed.

R. 36−37.

This analysis again reflects the ALJ's careful consideration of record evidence in determining that the Claimant had no limitation in this domain. *Id*. Notably, Plaintiff has not explained why the ALJ's analysis in this regard was deficient. *See generally Plaintiff's Brief*, ECF No. 23; *see also Atkins*, 2020 WL 1970531, at *4; *Hutcheson o/b/o A.M.*, 2017 WL 3581675, at *9. The Court therefore concludes that the ALJ's analysis and determination that Claimant had no limitation in the domain of health and physical well-being enjoys substantial support in the record. *See* 20 C.F.R. § 416.926a(l)(2)(v); *cf. Brewer on behalf of Z.C. v. Berryhill*, No. CV 17-694-LPS, 2018 WL 4554505, at *9 (D. Del. Sept. 21, 2018) (finding substantial evidence supported the ALJ's finding of no limitation in the domain of health and physical well-being where "[t]he record reflects that Z.C. has no significant health concerns reported in medical records, she exhibited overall good health, and she does not take routine medication for health problems. Both State agency consultants opined that Z.C. did not have any limitations in this domain").

## V.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 4, 2021                                     *s/Norah McCann King*
                                                          NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

18